May it please the court, my name is Patience Milrod. I represent Mr. Johnson in this matter and again I appreciate being permitted to appear by telephone this morning. As the court is aware, this case arises from seizures of two guns in Mr. Johnson's residence. Both were seized near in time to Mr. Johnson's arrest on a body attachment for failing to appear as a witness in an unrelated matter. With respect to the first seizure, the high standard arms 22, actually with respect to both seizures, there was no search warrant. Therefore the seizures are per se unreasonable and the government's argument of course is that there was no warrant necessary. With respect to the high standard arms 22, the claim first is that the search was incident to arrest. The United States Supreme Court has decided Arizona v. Gantt since the trial court decision in this matter. My client would have the benefit of Gantt since his conviction is not final yet. Gantt of course holds that Chimel v. California's justifications for obviating the warrant requirement must be observed in a search incident to arrest even in a vehicle, even when the arrestee has been the occupant of a vehicle. Those rationales are to protect officer's safety and avoid the loss of evidence. It is our position in this matter that both of those rationales would have been met if the officers had done what they needed to do and that was seize the box and then do what the Constitution requires them to do and that is to secure a warrant before searching it. Chimel v. California over the years has been subject to more and more expansive interpretation including in this circuit even search of areas that were accessible to the arrestee immediately prior to his arrest even though they were not within reach at the time of the search itself. In this case, the evidence is uncontroverted that Mr. Johnson was secured prior to the officers opening the box that had the gun in it He had been completely compliant and unresisting at the time he was arrested. He was handcuffed. The partner of officer Dinell was leading him out of the garage. There were no other occupants of the garage. Mrs. Johnson who was the only other individual apparent in the area was already in custody herself. There was no danger to the officers. All the evidence in the garage including the contraband and including the box that turned out to have a gun in it was completely within the control of officer Dinell and there was no risk of it being lost or destroyed or tampered with. The seizure of that box would actually have accomplished both of the concerns that Jimmel allows as permitting an exception to the warrant requirement. Was the box within your client's reach when the officer entered the structure? Yes. Was it marked as indicating what was inside? It was not a single purpose container although that's our position even though it was labeled as having I believe it had a drawing of a gun on it and it said high standard arms 22. It certainly is a box that could have contained a gun. It was also an old box and as trial counsel suggested and we suggest that this is a legitimate inference, it's very much like an old shoe box. It was old. It was repaired with duct tape and it was not at all obvious that it had to contain a gun and that's one of the important criteria for a single purpose container finding. Does that answer the court's question? Yes. Go ahead. The officer essentially admitted and Judge Wanger essentially did say as much that the seizure of the box, the only purpose for searching it after seizing it was to avoid having to get a warrant and that's just not permissible. Those of us who live here in the Central Valley, we would be really regretful if the court were to send a message to law enforcement here that they can avoid a warrant because it's more convenient. But also the United States Supreme Court has explained already that the Constitution doesn't permit that. In Texas v. Brown, the court held once the container is in custody,  some inconvenience to the officer is entailed by requiring him to obtain a warrant before opening the container. But that alone does not excuse the duty to go before a neutral magistrate and it is the defendant's position that that was what the officers needed to do even if they seized the box. The other issue is whether or not the gun was in plain view because it was located in a single purpose container and the case on which the government relies, United States v. Gust, makes clear that the standard is whether an average person would conclude the box could only hold a gun. It's not a, is it reasonable to believe or is it probable that? Is this the only thing that could be in this container? And the answer to that question is clearly no. So a warrant was necessary here. A seizure of the box would have satisfied the concerns that the United States Supreme Court has recognized under Chimmel that might justify avoiding a warrant. But here a warrant was not optional in order to search that box and that's what the officers needed to do. With respect to the Tikka Model T3 270 caliber rifle, again, no search warrant. Again, the seizure of the gun was per se unreasonable and Judge Wanger used a couple of different rationales for upholding the seizure of this particular gun. First of all, he found that Officer Johnson had permission to be in the home and we want to be very clear that his permission to be in the home was extremely limited and expired at the moment he encountered the 13-year-old girl in the living room and took her out of the house. That was the end of that. And actually before he even left that living room, which was upon really the beginning, he had first entered the house, that was the first room he went into, found her, and at that point had also made contact by telephone with her grandmother, knew the grandmother was coming. So there he had found the girl and she was safe and he knew that she was going to be safe because she was going to go with the grandmother and he took her out of the house and that was the end of that. It should have been the end of that. It was certainly the end of his permission to be in the home. Excuse me, I couldn't tell from the record who Junior was. You know, nobody's really clear who Junior was and I'm trying to recall myself whether they actually found Junior or whether there was just a concern that there might be Junior in the home. But one thing that was clear was that Mrs. Johnson's request to the officer that the daughter be found and retrieved was because Junior was in the home. So once the daughter was found and retrieved, that was the end of that. There was no additional permission to find Junior no matter what. It was, I don't want my daughter in this house with this person. And so once the daughter was out of the house, to the extent Junior had anything to do with the permission to be in the home, that also was obviated. That was no longer an issue. This was a conditional plea, right? Yes. And limited to the seizure of the weapons? Yes. Okay. You've got a few minutes left. Why don't we hear from the government at this time? Thank you. I wanted to ask a question. We've got a question here from Judge Traker. Excuse me. Yes, sir. Counsel. Under your view of what a lawful arrest, I mean a search incident and lawful arrest, what were the police supposed to do with this guy Junior who might be around? I don't think they had anything to do with Junior. They didn't learn about Junior until after. In other words, the cops were supposed to, there were two cops, right? Right. And while they take Johnson out, now it would be one cop versus Johnson while the other one goes to get a search warrant, right? Well, these are two different locations. What do you mean they're two different? Weren't they all on the? They were all on the property. But in terms of the chronology, Officer Donnell went into the makeshift garage, found Mr. Johnson, handcuffed him, turned him over to his partner, opened the box. All of that happened without any consciousness that Junior, that there was such a person as Junior, that it was after Officer Donnell had already put Mr. Johnson in the patrol car and, of course, the box had already been opened, the gun had already been seized, that Mrs. Johnson said to a different officer, my daughter's in the house, would you please go in and get her? There's this guy Junior in there. And so it was Officer Donnell, at the time he opened the box, Junior was not even in the equation and certainly wasn't anywhere in the immediate vicinity and no one had any reason to believe he was, you know, there was any such person. Well, let me ask you, the logic of your argument would be, suppose the cops, before they actually put the handcuffs on Johnson, had grabbed the revolver, right? Okay. Then presumably it would be lawful before they actually did it. Would you tell them to stand still when they grabbed the gun and then put the handcuffs? No, because they didn't, the gun was not in plain view. I'm just asking the logic, if they had done that, then presumably your argument that it was not a lawful search incident to arrest would have no, you know, no force behind it. Well, no, I'm not going to, I can't, respectfully I can't agree with the court. If they had, they still didn't have a warrant. They still had to have a justification for seizing the gun. Their claim justification, it's a seizure pursuant to an arrest. If they seized it without making the arrest, then even that justification disappears. They made the arrest but they didn't put handcuffs on him. They told him you're under arrest but they didn't put handcuffs, therefore he still presents a danger. But he grabbed the revolver. I mean, aren't we getting caught up in a pretty formalistic view of what's a lawful search incident to arrest? It's one thing to take the guy out to the car and then go back. I think the question has to be whether or not the officers have secured the situation. So if they walked in, they're going to, if they have Mr. Johnson under control one way or another, then they don't have a need to, under any circumstances, they had no need to open the box and seize the gun and search the box. They had no need to do that no matter what the circumstances were. The extent of their authority at that time was to seize the box and get a warrant for it. Whether he had handcuffs on, he didn't have handcuffs on, whatever the situation was, the Constitution, the Fourth Amendment, requires that they get a warrant before they open that box. And they didn't have any reason not to do that. Okay. I think we understand your argument. Okay. Thank you. Any more questions? Okay. We'll hear from the government. Ms. Phan? Good morning, Your Honors. Susan Phan for the United States. You're an assistant United States attorney in the Eastern District? Yes, Your Honor. Okay. Correct the record now? Could you move the microphone closer to you? Thank you. Thank you. It's the government's position that this Court should affirm the district court's order denying Mr. Johnson's motion to suppress for the following three reasons. The seizure of the revolver falls within the plain view exception of the warrant requirement. In addition, the revolver was seized during a lawful search incident to arrest. And lastly, the rifle was seized in plain view after the officers entered the defendant's home pursuant to the emergency doctrine. Seizure under the plain view. The seizure of the rifle occurred after the daughter was removed from the home, correct? That is correct. My understanding of the record was one of the officers then asked someone, perhaps the daughter, for a, quote, tour of the house. Yes, that is correct. What did that have to do with any emergency? Well, once the officer encountered the 14-year-old girl, it was immediate. It caused Officer Gonzalez immediate concern for the safety of the child. She's outside the home? She was with the home giving the officer this tour. No, no. They go in, they find her, they take her out. Right. Am I correct so far? Yes. And when she's outside the home, one of the officers said, would you give me a tour of the home? Yes. And then they go back in. Yes. What emergency was present at that point? Well, initially when the officer went in, it was immediately apparent that there was a health and safety issue, that this home was uninhabitable. There was the officer in charge. She was outside the home, and any danger inside the home was inside the home, right? This was the living condition of the daughter, even though, of the 14-year-old girl. Even though the grandmother was going to take the daughter away, we don't know the condition of the grandmother, whether she was physically able or financially able to take care of the granddaughter. So there is a possibility that the granddaughter could have been returned to the home, in which case the granddaughter would be placed in a very- Okay. I'm trying to understand this picture. The Mr. and Mrs. Johnson are under arrest at this point, correct? Yes. They're handcuffed. Yes. They're outside the home. They are. They told one of the officers that their daughter is inside the home, correct? Yes. And the officer goes in, finds the daughter, brings her out. Yes. There are two officers present. Correct. One of them stays with the daughter and the two Johnsons, correct? Yes. And the other one asks the daughter, can I have a tour of the house? Right. Okay. That's the point at which, tell the panel what facts suggested there was still an emergency. It's basically the condition of the home when the officer saw the conditions and learned that there was no running water, that there was no food in the house, there was no stove where food could be made. And those conditions, under the officer's community caretaking position to report to CPS, it was necessary for him to document what he saw and the conditions of the home. Is that it? Yes. And so under that, when the officer was doing this protective sweep and surveying the home in plain view, without even walking into the detached garage because there was so much clutter, in plain view the officers saw the rifles. And so it is the government's position that the seizure of those rifles were reasonable. You're not suggesting clutter constitutes an emergency circumstance? No. Otherwise my office is really in trouble. I think it's the overall, the totality of the circumstances that given that there was no running water and that there was no food and just the basic that this place was just not inhabitable. Suppose we disagree with you. Was it harmless error? On the rifle. Suppose we disagree on the rifle. Yes, because there is the proper seizure of the revolver found in plain view or in the alternative. Was there any difference in the sentencing because of the fact that there were two weapons? No, Your Honor. The next threshold level is three weapons, and that would have affected Mr. Johnson's sentencing. When the officer went back in the house, he actually saw two weapons, didn't he, inside the house? Yes, two rifles, but one by statute didn't qualify as a firearm, so it's just left with that one rifle. Okay. All right. I think we understand your argument. Any questions? Thank you for coming in today. Counsel, you have a few minutes left for rebuttal. I think I will waive my opportunity for rebuttal, but thank you very much. Okay. Thank you, and travel safely. Thank you. Good health to your family. Thank you. The case just argued will be submitted. You can terminate the phone conversation at this time. Thank you, Your Honor.
judges: Trager, Hawkins, Thomas